■ TOWER INSURANCE COMPANY OF NEW YORK, Appellant, v LIN HSIN LONG CO., Trading as HUNAN RITZ RESTAURANT, et al., Respondents. [855 NYS2d 75]—

Order, Supreme Court, New York County (Judith J. Gische, J.), entered September 7, 2007, which denied plaintiff's motion for summary judgment declaring that it is not obligated to defend or indemnify defendant Lin Hsin Long Co., trading as Hunan Ritz Restaurant (the insured), in an action commenced against it by defendant Charlotte Theodoratos, reversed, on the law, without costs, the motion granted and summary judgment awarded to plaintiff declaring that it is not obligated to defend or indemnify the insured in the lawsuit commenced against it by Theodoratos. The Clerk is directed to enter judgment accordingly.

Plaintiff issued a commercial general liability policy to the insured, a restaurant, that was to provide coverage for the insured's premises from February 3, 2004 through February 3, 2005. The policy contained a provision requiring the insured, "as soon as practicable," to provide notice to plaintiff of an "occurrence" that may result in a claim.

On January 29, 2005, Theodoratos slipped and fell near the women's restroom on the lower level of the insured's premises. Theodoratos was removed from the premises on a stretcher and transported by ambulance to a hospital. Employees of the insured were present when the accident occurred, were aware of the accident and offered assistance to Theodoratos. The manager of the insured, while not present when the accident occurred, was informed of the accident the day it occurred by other employees of the insured. Based on the information imparted to him by the employees, the manager has asserted in this litigation that he believed that the accident was "caused by [Theodoratos'] own actions," that no claim would be asserted against the insured and that "no further action" was required.

Approximately 2½ weeks after the accident, Theodoratos retained counsel to represent her in connection with the accident. Shortly after being retained, counsel requested the name and address of the licensee of the premises where the accident occurred from both the Westchester County Department of Health and the State Liquor Authority (SLA), and a copy of the police report regarding the accident generated by the New Rochelle Police Department. By a letter dated March 3, 2005, the SLA provided counsel with the name and address of the insured.

Counsel sent a letter dated March 8, 2005 to the insured, notifying it that Theodoratos had sustained personal injuries on the premises as a result of the insured's negligence, and "suggest[ing] that [the insured] forward th[e] letter to [its] insurance carrier so that they [sic] may investigate th[e] occurrence

and advise us as to what disposition they [*sic*] intend on making on this claim." After receiving no response from the insured, counsel sent a follow-up letter dated April 11, 2005. Counsel observed that he had not been contacted by the insured's insurance carrier despite his "suggestion that [the insured] forward [the March 8] letter to [the insurance carrier]," and stated that "[i]n view of the time element, a prompt response from your insurance company would be appreciated." Counsel had no further contact with the insured, and did not undertake any efforts to identify the insured's insurance carrier or notify the insurance carrier of the accident.

Plaintiff did not receive notice of the accident until October 21, 2005, when it received from either the insured or the insured's broker a copy of the summons and complaint in Theodoratos' personal injury action, which was commenced on July 12, 2005. Following its investigation of the accident, plaintiff, by a letter dated November 17, 2005, disclaimed coverage on the ground that neither the insured nor Theodoratos timely notified plaintiff of the accident. Plaintiff commenced this action seeking a declaration that it has no duty to defend or indemnify the insured in Theodoratos' action. Supreme Court denied plaintiff's motion for summary judgment on the complaint, and this appeal ensued.

Where a liability insurance policy requires that notice of an occurrence be given "as soon as practicable," such notice must be accorded the carrier within a reasonable period of time (*Great Canal Realty Corp. v Seneca Ins. Co., Inc.*, 5 NY3d 742, 743 [2005]). "The duty to give notice arises when, from the information available relative to the accident, an insured could glean a reasonable possibility of the policy's involvement" (*Paramount Ins. Co. v Rosedale Gardens*, 293 AD2d 235, 239-240 [2002]). " '[W]here there is no excuse or mitigating factor, the issue [of reasonableness] poses a legal question for the court,' rather than an issue for the trier of fact" (*SSBSS Realty Corp. v Public Serv. Mut. Ins. Co.*, 253 AD2d 583, 584 [1998], quoting *Hartford Acc. & Indem. Co. v CNA Ins. Cos.*, 99 AD2d 310, 313 [1984]).

Here, plaintiff established as a matter of law that the insured failed to give plaintiff notice of the accident within a reasonable period of time. The accident involved a patron who slipped and fell on a floor on the insured's premises and had to be removed from the premises on a stretcher and placed in an ambulance. Moreover, the insured, through its employees (*see Public Serv. Mut. Ins. Co. v Harlen Hous. Assoc.*, 7 AD3d 421 [2004]), knew about the accident on the day it occurred. Thus, although the

duty to give notice arose on the day of the accident, the insured did not give plaintiff notice until almost nine months after it occurred—an unreasonable delay as a matter of law (*see id.*; *DiGuglielmo v Travelers Prop. Cas.*, 6 AD3d 344, 346 [2004], *lv denied* 3 NY3d 608 [2004]; *Paramount Ins. Co.*, 293 AD2d at 238, 241).

Seeking to avoid the consequences of its failure to give notice to plaintiff within a reasonable period of time, the insured asserts that it had a reasonable, good faith belief that the accident would not result in liability (*see Great Canal Realty Corp.*, 5 NY3d at 743). As a matter of law, however, this excuse fails for the reasons just discussed—the insured's employees were aware of the accident, it involved a patron who slipped and fell on the insured's premises and the patron had to be removed by stretcher and transported by ambulance (*see Paramount Ins. Co.*, 293 AD2d at 240-241; *SSBSS Realty Corp.*, 253 AD2d at 585; *see also DiGuglielmo*, 6 AD3d at 346; *Rondale Bldg. Corp. v Nationwide Prop. & Cas. Ins. Co.*, 1 AD3d 584 [2003]). Moreover, the manager's professed belief that the accident was Theodoratos' own fault is insufficient to raise a triable issue of fact with respect to whether the insured had a reasonable, good faith belief that the accident would not result in liability. As Justice Sullivan stated in *Paramount Ins. Co.* (293 AD2d at 240): "the requirement of prompt notice of any occurrence that 'may result in a claim' should not be interpreted in a way that the insurer is compelled to relinquish its right to prompt notice and all the benefits that accrue therefrom—a timely investigation and the opportunity, if appropriate, to dispose of the claim in its early stages, an opportunity that might be irretrievably lost in the case of delayed notice—by placing undue emphasis on the liability assessment of one not trained or even knowledgeable in such matters."

Similarly, no triable issue of fact exists regarding the adequacy of the efforts of Theodoratos' counsel to ascertain the identity of plaintiff and notify it of the accident. An injured party, such as Theodoratos, has an independent right to notify an insurance carrier of an accident (*see* Insurance Law § 3420 [a] [3]). However, "the injured party is required, in order to rely upon that provision, to demonstrate that he or she acted diligently in attempting to ascertain the identity of the insurer, and thereafter expeditiously notified the insurer" (*Steinberg v Hermitage Ins. Co.*, 26 AD3d 426, 428 [2006]; *see also Lauritano v American Fid. Fire Ins. Co.*, 3 AD2d 564, 568 [1957], *affd* 4 NY2d 1028 [1958] ["When the injured party has pursued his [or her] rights with as much diligence as was reasonably possible

the statute shifts the risk of the insured's delay to the compensated risk-taker who can initially accept or reject those for whom it will bear such risks" (internal quotation marks omitted)]). Stated differently, "where the injured person proceeds diligently in ascertaining coverage and in giving notice, he [or she] is not vicariously charged with any delay by the assured" (*Jenkins v Burgos*, 99 AD2d 217, 221 [1984]; *see National Grange Mut. Ins. Co. v Diaz*, 111 AD2d 700, 701 [1985]).

Here, the evidence establishes as a matter of law that Theodoratos neither exercised reasonable diligence in attempting to ascertain the identity of plaintiff nor notified it of the accident. With regard to the latter, it is undisputed that Theodoratos did not give any notice to plaintiff; the belated notice received by plaintiff was supplied by the insured when it or its broker forwarded to plaintiff the summons and complaint in Theodoratos' action. Since Theodoratos did not assert her own right to provide notice, but rather relied on the insured to do so, her rights are derivative of the insured's (*see Mount Vernon Fire Ins. Co. v Harris*, 193 F Supp 2d 674, 679 [ED NY 2002]). *Appel v Allstate Ins. Co.* (20 AD3d 367 [2005]), *Denneny v Lizzie's Buggies* (306 AD2d 89 [2003]) and *Cirone v Tower Ins. Co. of N.Y.* (39 AD3d 435 [2007], *lv denied* 9 NY3d 808 [2007]), cited by the dissent, are distinguishable. In both *Appel* and *Denneny*, the injured party provided some form of belated notice to the insurance carrier. In *Cirone*, the Court found that the injured party's action to recover insurance proceeds pursuant to Insurance Law § 3420 (a) (2) was not barred based upon her failure to give written notice to the carrier because the insured provided notice of the accident to the carrier and the injured party's counsel, upon being contacted by the carrier, provided the carrier information regarding the accident.

With regard to the issue of reasonable diligence, shortly after the accident, Theodoratos' counsel made inquiries with both the Westchester County Department of Health and the SLA, seeking *the name and address of the licensee* of the premises where the accident occurred; no request for information regarding the insurer of the licensee was requested from these agencies or anyone else. The plain language of the requests shows that Theodoratos' counsel was seeking to ascertain the identity of the licensee of the premises, not the licensee's insurer, and thus these requests do not evince reasonable diligence by Theodoratos' counsel in seeking to identify plaintiff. For the same reasons, the mere request for a copy of the police report regarding the accident generated by the New Rochelle Police Department does not evince reasonable diligence.

Even more importantly, however, Theodoratos' counsel's letter to the insured simply "suggest[ed]" that the insured forward the letter to its insurance carrier. Counsel's subsequent letter stated only that "a prompt response from [the insured's] insurance company would be appreciated." Neither letter is sufficient to raise a triable issue of fact regarding whether Theodoratos exercised reasonable diligence. Indeed, the undisputed fact that Theodoratos' counsel never even requested from the insured the name of its insurance carrier (nor undertook additional efforts to identify the carrier) compels the conclusion that Theodoratos did not exercise reasonable diligence.

In sum, Supreme Court erred in denying plaintiff's motion because no triable issue of fact exists regarding whether the insured or Theodoratos provided timely notice of the accident to plaintiff. In light of our conclusion that plaintiff is entitled to summary judgment on that ground, we do not pass on plaintiff's remaining arguments in favor of reversal. Concur—Buckley, Sweeny and McGuire, JJ.

Mazzarelli, J.P., and Andrias, J., dissent in part in a memorandum by Andrias, J., as follows: On January 29, 2005, Charlotte Theodoratos slipped and fell near the bottom of the stairs leading to the bathroom in the Hunan Ritz Restaurant and was removed from the restaurant by ambulance on a stretcher, which was enough to trigger the restaurant's obligation under the subject policy to notify plaintiff insurer of Ms. Theodoratos's potential claim as soon as practicable (*see Zadrima v PSM Ins. Cos.*, 208 AD2d 529 [1994], *lv denied* 85 NY2d 807 [1995]). We therefore agree that the restaurant failed to comply with that obligation when, despite two letters from Ms. Theodoratos's attorney suggesting that it forward her claim to its insurer, it did not notify plaintiff until October 2005, when it forwarded the summons and complaint that had been served on the Secretary of State in July. We disagree, however, with the majority's conclusion that Ms. Theodoratos and her attorney failed to exercise reasonable diligence in attempting to ascertain plaintiff's identity for purposes of independently placing it on notice of her claim pursuant to Insurance Law § 3420 (a) (3).

It is well settled that in exercising this independent right to give notice to the insurer, an injured party should not be charged vicariously with the insured's delay and that, in determining the reasonableness of such notice, the notice required is measured less rigidly than that required of the insured and the sufficiency thereof is governed not by the mere passage of time but by the means available therefor (*Appel v Allstate Ins. Co.*, 20 AD3d 367, 368-369 [2005]). Thus, "[w]here, as here, the insurer

does not dispute receiving notice from its insured, the only issue with respect to the injured party [is] whether the efforts of the injured party to facilitate the providing of proper notice were sufficient in light of the opportunities to do so afforded [her] under the circumstances" (*id.* at 369 [internal quotation marks and citations omitted]). That Ms. Theodoratos never provided plaintiff with formal, written notice of the claim does not necessarily relieve plaintiff of its duty to indemnify the restaurant, inasmuch as plaintiff did eventually receive notice of the claim from the restaurant (*see Cirone v Tower Ins. Co. of N.Y.,* 39 AD3d 435, 436 [2007], *lv denied* 9 NY3d 808 [2007]).

While Ms. Theodoratos and her attorney might possibly have done more (phone calls, personal visit, etc.), the case law does not so hold, nor can we say as a matter of law that their efforts were inadequate. They sent their first claim letter to the restaurant on March 8, 2005, shortly after they ascertained its corporate identity, and a follow-up letter on April 11, 2005 asking for a prompt response. When they received no response to those letters, they finally got the restaurant's attention by filing their summons and verified complaint with the Westchester County Clerk on July 12, 2005 and serving it on the Secretary of State on July 18, 2005 pursuant to Business Corporation Law § 306 (b). Presumably the Secretary of State promptly sent a copy of the process to the restaurant, as required by the statute. Nevertheless, it was not until shortly after October 10, 2005, when plaintiff notified it that service on the Secretary of State had been made in July, that the restaurant notified plaintiff of Ms. Theodoratos's claim. However, even though the restaurant's notice may have been untimely as to it, that does not foreclose a finding that Mrs. Theodoratos's efforts were sufficient under the circumstances and the notice was timely as to her. Unlike automobile accidents, where it is easier to find the insurer of the offending vehicle, in order to ascertain the name of the restaurant's insurer some cooperation from the restaurant was required (*cf. Cirone,* 39 AD3d 435 [2007], *supra*). While this is not a case where the restaurant affirmatively misled the injured party (*see Denneny v Lizzie's Buggies,* 306 AD2d 89 [2003]), the restaurant nevertheless did nothing in response to the letters.

Thus, the motion court properly denied plaintiff's motion for summary judgment on its claim for a declaratory judgment that it is entitled to disclaim coverage, finding an issue of fact as to whether Ms. Theodoratos made diligent efforts to ascertain plaintiff's identity and independently give it notice of her claim. It should be left to the finder of fact to weigh the restaurant's failure to contact plaintiff until after it was served with process,

and determine whether any further effort by Ms. Theodoratos to communicate with the restaurant would have been futile.

The motion court also correctly found a triable issue of fact as to whether, as plaintiff claims, it had effectively cancelled the policy almost a year before the accident for nonpayment of premiums. For present purposes, plaintiff's claim that it has no record of ever receiving or cashing the restaurant's check is rebutted by the affidavit of the restaurant's principal that he mailed a check for the premium prior to the cancellation date as corroborated by the restaurant's check logbook. Moreover, the invoice sent by plaintiff to the restaurant for precancellation earned premiums was not clear that the policy had been cancelled, and the fact that plaintiff sent no further invoices to the restaurant relating to the subject policy is not dispositive. [*See* 16 Misc 3d 1137(A), 2007 New York Slip Op 51718(U).]