■ Tower Insurance Company of New York, Appellant, v Rong Rong Sun, Also Known as Andy Xu, Father and Natural Guardian of Barry Xu, an Infant, et al., Defendants, and Alejo Gomez, an Infant, by Her Mother and Natural Guardian, Fulvia Rodriguez, et al., Respondents. [963 NYS2d 225]—

Order, Supreme Court, New York County (Richard F. Braun, J.), entered August 11, 2011, which, to the extent appealed from as limited by the briefs, denied plaintiff insurer's motion for summary judgment declaring that it is not obligated to indemnify or defend its insured, defendant Andy Xu, in the underlying personal injury action, reversed, on the law, the motion granted, without costs, and it is so declared.

On this record, plaintiff, Tower Insurance Company of New York, is entitled to summary judgment declaring it free of any obligation to defend or indemnify its insured in the underlying personal injury action. As discussed below, neither the insured nor the injured party ever gave Tower notice of the underlying incident or the ensuing lawsuit. In particular, the injured party failed to give Tower notice, or even to conduct further inquiry, for nearly two months after his counsel received a policy renewal certificate evidencing that Tower had renewed the

insured's policy only five months after the incident. Under these circumstances, to deny Tower summary judgment would be to abrogate any duty of an injured party to make a reasonable effort, judged by "the means available" to it (*Appel v Allstate Ins. Co.*, 20 AD3d 367, 369 [1st Dept 2005] [internal quotation marks omitted]), to give notice to an insurer pursuant to Insurance Law § 3420 (a) (3). We find no warrant for this result in the statute or in case law.

It is undisputed that the insured alleged tortfeasor (Xu) never gave Tower notice of the May 2007 incident giving rise to the claim or of the underlying lawsuit, in which the injured party (Gomez) sued Xu and the school district on whose premises the incident occurred. It is also undisputed that, on or about October 29, 2008, Xu served on counsel for the other parties to the underlying action an amended discovery response to which was attached a "Homeowners Policy Renewal Certificate" representing that Xu had been covered by a Tower *renewal* homeowners policy for the year commencing October 8, 2007—five months after the subject incident. In spite of his counsel's receipt of this information, Gomez neither contacted Tower nor took any other action to investigate whether a Tower policy had been in effect on the date of the incident. The school district, however, based on the same renewal certificate that Gomez ignored, did notify Tower of the matter, by letter dated November 13, 2008. Thereafter, by letter to all parties to the underlying action, dated December 19, 2008, Tower disclaimed coverage.

The question before us is whether Tower may be required to afford coverage to its defaulting insured (Xu) for the benefit of the injured party (Gomez) pursuant to Insurance Law § 3420 (a) (3). Gomez is not accountable, of course, for Xu's failure to provide notice to Tower during the period of nearly a year and a half from May 3, 2007, the date of the incident, to October 29, 2008, the date of Xu's amended discovery response providing to Gomez the Tower "Homeowners Policy Renewal Certificate" (*see Appel*, 20 AD3d at 368 ["Having been statutorily granted an independent right to give notice and recover directly from the insurer, the injured party . . . is not to be charged vicariously with the insured's delay" (internal quotation marks omitted)]).[1] Still, even though "[i]n determining the reasonableness of an injured party's notice, the notice required is measured less

---

1. The dissent's assertion that our reversal "penaliz[es] Gomez for Xu's dilatory and obstructive behavior" is simply false. The question is whether Gomez acted reasonably and diligently *after* his counsel received the renewal certificate from Xu.

rigidly than that required of the insureds" (*id.*), some level of diligence was required of Gomez, as the dissent reluctantly concedes, once his counsel, upon receipt of the certificate evidencing that coverage had been *renewed* five months after the incident, was put on notice of the likelihood (even if not a certainty) that Xu had been covered by a Tower policy at the time of the incident (*see Kalthoff v Arrowood Indem. Co.*, 95 AD3d 1413, 1415 [3d Dept 2012] [where the insured has failed to comply with the notice conditions of the policy, "the injured party bears the burden of demonstrating that it made reasonable efforts to identify the insurer and provide it with prompt notice"], *lv denied* 19 NY3d 815 [2012]).

It is undisputed that Gomez took no action after his counsel finally received the policy renewal certificate. Again, not only did Gomez not give Tower notice of the claim, but he also made no effort to seek further information about the possibility of coverage from either Xu or Tower. After about seven weeks of inaction by Gomez, Tower issued its letter disclaiming coverage in response to the notice it had received from the school district. "Since [Gomez] did not assert [his] own right to provide notice, but rather relied on the insured to do so, [his] rights are derivative of the insured's" (*Tower Ins. Co. of N.Y. v Lin Hsin Long Co.*, 50 AD3d 305, 309 [1st Dept 2008]). Unfortunately, it is established and undisputed that, in this case, the insured forfeited his right to coverage by failing to provide Tower with timely notice—or, indeed, any notice at all—as required by the policy. We conclude, therefore, that Tower is entitled to summary judgment.

The dissent asserts that, because the renewal certificate did not itself directly prove that a policy had been in effect at the time of the incident, Gomez's receipt of that certificate "imposed [no] obligation to investigate further."[2] The only reason given for this conclusion is that "multiple discovery requests had been served and Xu's responses thereto were less than forthcoming." Putting aside the fact that the record does not contain an affirmation by Gomez's counsel offering this excuse for his inaction, we do not see how these circumstances made it reasonable for Gomez's counsel to ignore the information with which he had finally been provided. Plainly, a certificate stating that a policy has been renewed means that a policy preexisted the re-

---

2. Contrary to the dissent's assertion that "the word 'renewal' [in the certificate] is not capitalized," the certificate bears the heading "Homeowners Policy Renewal Certificate," with the first letter of each word capitalized. Even if the certificate were as characterized by the dissent, we fail to see how that would absolve Gomez of the obligation to make further inquiry.

newal. Further, whatever problems Gomez's counsel may have had in dealing with Xu's counsel, we fail to see how those problems prevented counsel from directing a letter to Tower, based on the renewal certificate in his hands, advising Tower of the incident. At a minimum, having received the renewal certificate, further inquiry to Tower and/or Xu's counsel was in order. Apparently, however, it is the dissent's position that one is only put upon inquiry notice when there is no longer a need for inquiry.

In the end, the dissent invokes the notice that Tower received from the school district as justification for requiring Tower to provide coverage in an action in which neither its insured nor the injured party gave Tower any notice. We fail to see how the school district's notice can be imputed to Gomez, given that Gomez's interests were entirely adverse to those of the school district, which is being sued by Gomez in the underlying action. Where an insurer covers more than one insured for liability arising out of the same incident, and each insured has an independent duty to give timely notice, notice by one insured cannot be imputed to another (*see Continental Cas. Co. v Employers Ins. Co. of Wausau*, 85 AD3d 403, 409 [1st Dept 2011]; *City of New York v St. Paul Fire & Mar. Ins. Co.*, 21 AD3d 978, 981 [2d Dept 2005]; *American Mfrs. Mut. Ins. Co. v CMA Enters.*, 246 AD2d 373 [1st Dept 1998]). Here, by analogy, the notice given to Tower by the school district, an alleged cotortfeasor with Tower's insured, should not be imputed to Gomez, the injured party, because Gomez had an independent statutory duty to give Tower notice and is an adversary of the school district in the underlying action. The dissent does not cite a single case supporting a contrary conclusion. Further, the dissent's assertion that it would have been "a futile act" for Gomez to give Tower notice because the school district had already done so is not cogent. Apart from the fact that Gomez could not rely on the school district's notice before he learned of it, this Court has held that an injured person's notice, if given promptly based on the information available to him or her, is effective even if given after the insurer has disclaimed in response to late notice from its insured (*see Appel*, 20 AD3d at 369).

In sum, it is difficult to avoid the conclusion that the dissent would have us decide this appeal based on sympathy for the injured party. While the loss giving rise to this claim is indeed tragic, our sympathy for the injured party provides no warrant for departing from established law. Concur—Andrias, J.P., Friedman and DeGrasse, JJ.

Manzanet-Daniels and Gische, JJ., dissent in a memorandum

by Manzanet-Daniels, J., as follows: I would affirm the order of the motion court denying plaintiff insurer's motion for summary judgment declaring that it is not obligated to indemnify Gomez, the plaintiff in the underlying personal injury action.[3]

Where the insured fails to give timely notice, an injured party can give notice himself, thereby preserving his or her right to proceed directly against the carrier (*Appel v Allstate Ins. Co.*, 20 AD3d 367 [1st Dept 2005]). Section 3420 (a) of the Insurance Law confers on the injured party an independent right to give notice, so long as he or she acts diligently in endeavoring to ascertain the identity of the insurer, and gives notice as soon as it is reasonably possible to do so (*see Lauritano v American Fid. Fire Ins. Co.*, 3 AD2d 564 [1st Dept 1957], *affd* 4 NY2d 1028 [1958]). In determining whether notice has been timely given, the standard to which an injured party is held is understandably less rigorous than the one applicable to an insured. "Having been statutorily granted an independent right to give notice and recover directly from the insurer, the injured party or other claimant is not to be charged vicariously with the insured's delay" (*Appel*, 20 AD3d at 368 [denying insurer's motion for summary judgment where the plaintiff did not become aware that the insurer was the carrier for the defendants in the underlying action until approximately two days before the insurer sent its disclaimer letter]; *Denneny v Lizzie's Buggies*, 306 AD2d 89, 89 [1st Dept 2003] [denying insurer's motion for summary judgment where the plaintiff tried several times over the course of a year to ascertain the identity of the defendant's insurer, especially in view of the "misleading conduct and subterfuge" of the defendant's owner to prevent disclosure of the insurance information sought by the plaintiff]; *see also Cirone v Tower Ins. Co. of N.Y.*, 39 AD3d 435, 435-436 [1st Dept 2007] [motion court properly found that the plaintiffs' action was not barred by the failure to give the defendant's insurer separate, formal written notice], *lv denied* 9 NY3d 808 [2007]).

I disagree with the majority's conclusion that Gomez failed to act diligently, depriving him of the protection of section 3420 (a). In response to explicit discovery requests from Gomez demanding copies of any applicable insurance policies, Xu responded "none." After many months of Gomez's attempting to ascertain whether Xu had insurance coverage, Xu produced a certificate for a homeowners policy for the year *after* the incident occurred (from October 8, 2007 through October 8,

---

**3.** On reargument, the motion court granted the insurer's request to enter a default judgment against Barry Xu, the father of the infant defendant. Plaintiff has accordingly withdrawn its appeal as respects Xu.

2008). Contrary to the majority, I do not believe that the fact that the certificate was denominated "renewal"[4] automatically leads to the conclusion that liability coverage was in effect on May 3, 2007, the date of the incident, or imposed an obligation to investigate further, particularly where multiple discovery requests had been served and Xu's responses thereto were less than forthcoming. Indeed, Gomez was under a reasonable belief that no coverage existed, since he had no documentation whatsoever of an insurance policy covering Xu on the date of the incident. The first Gomez learned of the existence of the Xu policy was on the date he received a notice from plaintiff insurer disclaiming coverage. The majority, in ruling that Gomez is not entitled to coverage under the Xu policy, is effectively penalizing Gomez for Xu's dilatory and obstructive behavior.

The insurer had been apprised of the action by the school district, Xu's codefendant in the underlying suit. Thus, it cannot be said that the insurer was in any way prejudiced or otherwise hampered in its investigation of the claim.

Gomez lost vision in an eye as a result of the incident. The majority now holds that Gomez is not entitled to coverage under Xu's policy because he neglected to give notice, even though doing so would have essentially been a futile act since the insurer had already been apprised of the suit by the school district and had already disclaimed coverage as to Gomez. I must respectfully disagree with the majority's conclusion that Gomez is not entitled to coverage under the circumstances of this case.

---

**4.** It bears further noting that Xu produced not the policy itself, but merely a certificate, and that the word "renewal" is not capitalized or otherwise highlighted.